**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EILEEN GRAYS, LLC,**

                                        **Plaintiff,**

        **vs.**                                             **1:18-cv-362**
                                                            **(MAD/DJS)**

**REMIX LIGHTING, INC.,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**MORGAN, LEWIS & BOCKIUS, LLP**          **J. KEVIN FEE, ESQ.**
1111 Pennsylvania Avenue, NW              **SHAOBIN ZHU, ESQ.**
Washington, District of Columbia 20004
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On March 23, 2018, Plaintiff Eileen Grays, LLC ("Plaintiff") commenced this action

against Defendant Remix Lighting, Inc. ("Defendant"). *See* Dkt. No. 1. Plaintiff alleges

"infringement of several federally registered copyrights and a copyright that is the subject of a

pending application in violation of 17 U.S.C. § 501 and for knowing misrepresentation in a

Digital Millennium Copyright Act ("DMCA") notice and counter-notice in violation of 17 U.S.C.

§ 512(f)." *Id.* On July 13, 2016, Plaintiff filed an amended complaint. *See* Dkt. No. 17. When

Defendant failed to answer or otherwise respond to the amended complaint, Plaintiff obtained a

Clerk's entry of default. *See* Dkt. No. 27. Plaintiff now moves for default judgment against

Defendant pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a permanent

injunction, as well as attorneys' fees and costs. *See* Dkt. No. 42.

## II. BACKGROUND

Plaintiff is a limited liability company organized under the laws of North Carolina, with its principal place of business in Chapel Hill, North Carolina. *See* Dkt. No. 1 at ¶ 1. Defendant is a corporation organized under the laws of New York, with its principal place of business in Albany, New York. *See id.* at ¶ 2.

Plaintiff commenced this action by filing a Complaint against Remix Lighting, Inc. and Susoki, Inc. on March 23, 2018.[1] *See* Dkt. No. 1. On May 2, 2018, Plaintiff filed an Amended Complaint. *See* Dkt. No. 17. In the Amended Complaint, Plaintiff asserts the following causes of action: (1) copyright infringement in violation of 17 U.S.C. § 106; and (2) misrepresentation under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f). *See* Dkt. No. 17 at ¶¶ 26–45. Plaintiff seeks monetary damages, injunctive relief, and attorneys' fees against Defendant. *See generally* Dkt. No. 17. Plaintiff alleges that it is the creator and owner of the valid copyrights covering a variety of works in the current matter, including the F4201 Crystal LED Ceiling Fan with Foldable Blades and photographs depicting this fan and its sculptural features (collectively, the "Copyrighted Works"). *See* Dkt. No. 45 at 2–3. Plaintiff alleges that Defendant infringed these Copyrighted Works by "willfully reproducing, distributing, displaying, and creating derivative versions of the Copyrighted Works without Plaintiff's authorization" on a variety of online platforms, including the Houzz and Remix Lighting websites. *Id.* at 3.

Furthermore, Plaintiff alleges Defendant knowingly submitted materially false DMCA notices that claimed Defendant owned or was authorized to use these Copyrighted Works. Additionally, Defendant falsely claimed that Plaintiff was in fact infringing Defendant's

---

[1] Susoki, Inc. was voluntarily dismissed on May 21, 2018, leaving Remix Lighting, Inc. as the sole Defendant. *See* Dkt. No. 21.

ownership of the same Copyrighted Works. *See id.* This resulted in the Houzz platform

removing the Copyrighted Works from Plaintiff's online store contained on the platform. *Id.*

Houzz further notified Plaintiff that it would repost the Copyrighted Works to Defendant's online

store "if it did not receive notification that Plaintiff filed an action seeking to restrain Defendant's

use of the Copyrighted Works, which necessitated the filing of this case." *Id.*

      Counsel for Defendant filed a Motion to Withdraw on November 4, 2018. *See* Dkt. No.

31. Magistrate Judge Daniel J. Stewart scheduled a hearing on the Motion, directing a

representative of Defendant to appear with counsel. *See* Dkt. No. 33. When the hearing was held

on December 4, 2018, no representative for Defendant appeared. *See* Dkt. No. 35 at 1. The

Motion to Withdraw was granted, and Magistrate Judge Stewart specifically noted that because

Defendant is a corporation, it is not permitted to proceed *pro se*. *See id.* Magistrate Judge

Stewart's Order also granted leave for Plaintiff to file a Motion to Strike Defendant's Answer if no

appearance of counsel occurred. *See id.* at 2. Four months passed without appearance of new

counsel for Defendant. *See* Dkt. No. 40 at 2. Plaintiff filed a Motion to Strike Defendant's

Answer. *See* Dkt. No. 39. On April 5, 2019, Magistrate Judge Stewart recommended that

"Defendant's Answer be stricken and that the Clerk enter a default against Defendant." Dkt. No.

40 at 3. This Court adopted Magistrate Judge Stewart's Report-Recommendation and Order in its

entirety on September 9, 2019. *See* Dkt. No. 42 at 4. This Court further ordered that Plaintiff's

Motion to Strike Defendant's Answer be granted, that the Clerk of the Court enter default against

Defendant, and that Plaintiff should move for default judgment within thirty (30) days of that

Order. *See id.*

      On October 9, 2019, Plaintiff filed the present Motion for Default Judgment. *See* Dkt.

Nos. 40, 45. In its Motion for Default Judgment, Plaintiff seeks the following relief: (1) a default

judgment; (2) a permanent injunction against Defendant's use of the Copyrighted Works; and (3) reasonable attorneys' fees and costs. *See* Dkt. No. 45 at 2–10. Plaintiff seeks a total of $86,355.00 in attorneys' fees and costs for work performed by the law firm it retained as counsel in this matter. *See* Dkt. No. 45 at 8. In addition, Plaintiff seeks a total of $400 in costs for the filing fee with the Court. *See* Dkt. No. 45-4 at ¶ 6; Dkt. No. 45 at 9.

Currently before the Court is Plaintiff's unopposed Motion for Default Judgment. *See* Dkt. No. 45.

## III. DISCUSSION

### A.    Entry of Default Judgment

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 5:10-CV-1272, 2008 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails to "plead or otherwise defend . . . the clerk must enter the party's default."'" *Id.* (quotation omitted); *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Id.* (quotation omitted). "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.* (quotation omitted); *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment

constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189–90 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (quotation omitted).

In the present matter, the Court finds that Plaintiff is entitled to an entry of default judgment against Defendant. After counsel for Defendant filed a Motion to Withdraw on November 4, 2018, *see* Dkt. No. 31, four months passed without appearance of new counsel for Defendant. *See* Dkt. No. 40 at 2. Further, Plaintiff properly served Defendant through an authorized agent in the Office of the Secretary of State of the State of New York on March 28, 2018. *See* Dkt. No. 8; Dkt. No. 45-4 at ¶ 3c. Moreover, in conformity with Local Rule 55.2, Plaintiff has amply demonstrated that Defendant is not in military service, an infant, or an incompetent. *See* Dkt. No. 45-4 at ¶ 3.

Plaintiff has plausibly alleged that it is entitled to relief for Defendant's acts of copyright infringement and misrepresentations under the DMCA. "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

361 (1991). There is no dispute that Plaintiff owns the valid copyrights to the Copyrighted Works as Plaintiff registered these works within five years of first publication, entitling it to the presumption that it is the lawful owner of the valid copyrights of these works. *See* Dkt. No. 45 at 4. Furthermore, there is no dispute that Defendant engaged in the unauthorized copying of constituent elements of the Copyrighted Works by creating derivative versions of them on the Houzz and the Remix Lighting online stores. *See id.* Defendant continued to sell these products and sent false counter-notices in response to Plaintiff's efforts to protect its copyrights, which demonstrates willfulness. *See Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 197 (S.D.N.Y. 2016).

Under 17 U.S.C. § 512(f), Plaintiff must show that Defendant "knowingly materially misrepresent[ed] [] (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification", and that Plaintiff was "injured by such misrepresentation, as the result of [a] service provider relying upon such misrepresentation." *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). It is undisputed that Defendant "knowingly submitted DMCA takedown notices and counter-notices with false claims that it owned and was authorized to use the Copyrighted Works and that Plaintiff was the actual infringer, which led Houzz to take down Plaintiff's content causing harm from lost sales and required initiation of this lawsuit in order to keep Houzz from reposting Defendant's infringing photos and products based on its false statements in its counter-notice." Dkt. No. 45 at 5; Dkt. No. 45-5; Dkt. No. 45-5, Exs. 1–6.

As such, the Court finds that Plaintiff has met its burden and is entitled to an entry of default judgment as to liability.

**B.     Permanent Injunction**

"Pursuant to 17 U.S.C. § 502, a permanent injunction may issue on such terms as the court deems 'reasonable to prevent or restrain infringement of a copyright.'" *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (quoting 17 U.S.C. § 502). "A permanent injunction is appropriate when infringement by unauthorized public performances has been proven." *Gladys Music v. Bilbat Radio, Inc.*, No. 07-CV-6086, 2007 WL 3033960, *2 (W.D.N.Y. Oct. 15, 2007) (citing *Broad. Music, Inc. v. Sonny Inc. Assoc., Inc.*, 865 F. Supp. 110, 114 (W.D.N.Y. 1994)) (other citation omitted); *see also Barnaby Music Corp. v. Catoctin Broad. Corp.*, No. CIV-86-868E, 1988 WL 84169, *3 (W.D.N.Y. Aug. 10, 1988) (granting permanent injunction against the defendant radio station that, after being confronted regarding their copyright infringing conduct, continued to operate without a required license, thereby establishing the threat of continued copyright violations).

Nevertheless,

> "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Granite Music Corp. v. Center Street Smoke House, Inc.*, No. 09-CV-00872A, 2011 WL 1898909, *9 (W.D.N.Y. May 19, 2011) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).[2]

---

[2] Although *eBay, Inc. v. MercExhange, L.L.C.*, was a patent infringement case, the Second Circuit has applied the same four factors in considering whether to grant a preliminary injunction

(continued...)

In the present matter, Plaintiff has met the requirements necessary for the Court to issue a permanent injunction. Specifically, the uncontroverted allegations in the Amended Complaint, as supplemented by the declarations and exhibits accompanying Plaintiff's Motion for Default Judgment, establish that Defendant infringed Plaintiff's copyrights despite knowledge of those copyrights. In particular, the uncontested facts establish that Defendant infringed Plaintiff's copyrights by willfully reproducing, distributing, displaying, and creating derivative versions of Plaintiff's Copyrighted Works, including on the Houzz and Remix Lighting online platforms. *See* Dkt. No. 17 at ¶¶ 14–16, 29–34. Defendant's actions continue to cause damage which cannot be adequately compensated by a monetary award alone.

Moreover, the Court finds that the balance of hardships tips decidedly in Plaintiff's favor. Requiring Plaintiff to commence litigation for each future violation would be an extreme hardship, while preventing Defendant from continually infringing on Plaintiffs' copyrighted material is not. Further, as the Second Circuit has noted, "[i]n the copyright realm, its has been said that an injunction should be granted if the denial would amount to a forced license to use the creative work of another." *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) (citations omitted). This is such a situation, in that "'the failure to issue a final injunction' would 'be tantamount to the creation of a compulsory license, future damages then becoming a sort of royalty.'" *Id.* (quotation omitted). Finally, nothing before the Court indicates that the public interest would be disserved by a permanent injunction.

---

[2](...continued)
in a copyright infringement action. *See Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010) (citations omitted). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). Thus, these factors apply to the present matter.

Plaintiff is also entitled to a permanent injunction under the DMCA. The DMCA provides that a court "may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation . . . ." *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000) (quoting 17 U.S.C. § 1203(b)(1)). Injunctive relief is "appropriate if there is a reasonable likelihood of future violations absent such relief and, in cases brought by private plaintiffs, if the plaintiff lacks an adequate remedy at law." *Id.*

In the present matter, it is clear that Defendant "knowingly submitted materially false Digital Millennium Copyright Act ("DMCA") notices claiming that it owned or was otherwise authorized to use the Copyrighted Works as well as false claims that Plaintiff was infringing Defendant's ownership of the Copyrighted Works, which resulted in the wrongful takedown of the Copyrighted Works from Plaintiff's online store on Houzz." Dkt. No. 45 at 3. Furthermore, "as a result of Defendant's false claims of ownership and authorized use in its DMCA notices, Houzz notified Plaintiff that it would repost the removed content from Defendant's online store if it did not receive notification that Plaintiff filed an action seeking to restrain Defendant's use of the Copyrighted Works, which necessitated the filing of this case." *Id.* Defendant's behavior, as well as its lack of responsiveness to the current proceedings, convinces the Court that there is a reasonable likelihood of future violations absent such relief. *See Elec. Creations Corp. v. Gigahertz, Inc.*, No. 5:12-CV-1423, 2013 WL 3229125, *5 (N.D.N.Y. June 25, 2013) (indicating that infringing trademarks on numerous occasions supports the inference that without a permanent injunction, a defendant will likely continue his or her illegal conduct). Furthermore, Plaintiff has no adequate remedy at law, as establishing "actual damages in a case of this nature would be difficult if not virtually impossible" to prove. *Universal City Studios*, 111 F. Supp. 2d at 343 (internal citations omitted).

Based on the foregoing, the Court holds that Plaintiff is entitled to a permanent injunction pursuant to 17 U.S.C. § 502, as well as under the DMCA.  *See Gladys Music*, 2007 WL 3033960, at *2; *see also Granite Music Corp.*, 2011 WL 1898909, at *10; *Broadcast Music, Inc.*, 555 F. Supp. 2d at 332 (citation omitted); *Universal City Studios*, 111 F. Supp. at 343.

C.      **Attorneys' Fees and Costs**

In the Second Circuit, "[a]ttorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (citation omitted).  Ultimately, "[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation omitted); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015).  The party seeking attorneys' fees "'bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.'" *Allende v. Unitech Design, Inc*., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (quotation omitted).

In calculating the "presumptively reasonable fee," the Second Circuit has held that a district court is "to bear in mind *all* of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original).  The relevant factors for a court to consider include, but are not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources

required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case. *See id.* at 184 n.2.[3]

### 1. Reasonable Hourly Rate

An attorney's reasonable hourly rate is defined as "the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergeron*, 652 F.3d at 290 (quoting *Simmons*, 575 F.3d at 174); *see also Monsour v. New York State Off. for People with Dev. Disabilities*, No. 1:13-CV-00336, 2018 WL 3349233, *17 (N.D.N.Y. July 9, 2018) (explaining that an attorney's hourly rate is considered reasonable when it is "in line with the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (quoting *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994)). The "court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district" and "on evidence proffered by the parties." *Adorno v. Port Auth.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (internal quotation marks omitted), *reconsideration granted in part*, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

---

[3] The Second Circuit also suggests in *Arbor Hill* that the district court should consider the twelve factors delineated in *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Arbor Hill*, 522 F.3d at 186 n.3. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

A district court may apply an out-of-district rate if the party seeking the higher rate rebuts the Second Circuit's presumption in favor of the application of the forum rule. *See Simmons*, 575 F.3d at 175-76. The Second Circuit has held that

> when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.

*Id.* at 175. To rebut that presumption, a party seeking higher out-of-district rates "must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176. "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, . . . or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* (internal citation omitted).

Plaintiff Eileen Grays, LLC is represented by the Washington D.C. based office of Morgan, Lewis, & Bockius LLP ("Morgan Lewis"). Plaintiff adopted a "reasonable blended rate" of $450 per hour. *See* Dkt. No. 45 at 9. Plaintiff states that "the $450 proposed blended billing rate is less than the combined average billing rate of IP partners and associates in the *AIPLA Report of the Economic Survey of 2019 . . . .*" *Id.* This includes the overall fees for this matter – which are closest to the lowest quartile of copyright litigation fees according to the *AIPLA Report of the Economic Survey of 2019. Id.* Plaintiff also provided the Court with the billing rates of the attorneys who were assigned to this case, which included the removal of fees for attorney Kenneth Davis "to err on the side of reasonableness." Dkt. No. 45 at 8, 9. In support of these

proposed hourly rates, Plaintiff has provided the Court with an affirmation from J. Kevin Fee. *See* Dkt. No. 45-4.

Fee is a partner with Morgan Lewis and is admitted to practice in New York. *See* Dkt. No. 45-4 at ¶ 1. Fee states in his affirmation that "the majority of time billed to the client was by the attorney with the lower billing rate. This attorney previously worked at the U.S. Copyright Office on matters including the Digital Millennium Copyright Act ("DMCA"), revisions to the U.S. Copyright Office's registration manual, the *Compendium of U.S. Copyright Office Practices*, and *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017), and therefore had specialized expertise in obtaining the copyright registration for the Plaintiff's works . . . handling DMCA communications on behalf of the Plaintiff, and drafting the filings associated with this case." Dkt. No. 45-4 at ¶ 5a. Fee further affirms that "attorneys with higher billing rates limited their time to appropriate review and participation in court proceedings. Of the more senior attorneys, Jordana Rubel and I had specialized knowledge in copyright litigation from numerous prior cases." *Id.* at ¶ 5b. Furthermore, "additional hours billed to Morgan Lewis partner Shaobin Zhu were due to his existing relationship with the Plaintiff and ability to communicate with the Plaintiff in Chinese to efficiently move the case forward." *Id.* at ¶ 5c. Additionally, the requested fees are "already below the actual rates the Plaintiff paid Morgan Lewis." Dkt. No. 45 at 8. Moreover, "[r]ecovery of these fees is further justified in this case because it was Defendant's dilatory tactics in this case that caused extra effort and expense by the Plaintiff and its counsel." *Id.* at 8.

The Court finds that Plaintiff has met its burden in showing that out-of-district rates for Morgan Lewis attorneys are warranted under the forum rule. Plaintiff has made the "particularized showing" necessary to overcome the *Simmons* presumption in favor of application

of in-district rates.  *See Simmons*, 575 F.3d at 175.  As shown above, Plaintiff demonstrated that "counsel's special expertise in litigating the particular type of case" could overcome the presumption in favor of application of the forum rule.  *Id.* at 175–76; *see also* Dkt. No. 45 at 8–9; Dkt. No. 45-4 at ¶ 5.  Thus, the Court finds that $450 is a reasonable hourly rate for Plaintiff's attorneys, given their years of practice and expertise in intellectual property litigation.

### 2. Reasonable Number of Hours

"The fee applicant also bears the burden of documenting the hours spent by counsel, and the reasonableness thereof."  *Stevens v. Rite Aid Corp.*, No. 6:13-CV-783, 2016 WL 6652774, *4 (N.D.N.Y. July 6, 2016).  In the Second Circuit, "'any attorney . . . who applies for court-ordered compensation. . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'" *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).  The district court "should exclude . . . hours that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley, v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted).  "In excluding hours that were not reasonably expended, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Osterweil v. R. Bartlett, III*, No. 1:09-cv-825, 2015 WL 1066404, *8 (N.D.N.Y. Mar. 11, 2015) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

Plaintiff requests a fee award based on 191.9 hours expended by its attorneys.  *See* Dkt. No. 45 at 10.  After reviewing Plaintiff's contemporaneous time records, Plaintiff appropriately delegated work to junior, less expensive attorneys, with 128.7 hours worked by the second most

junior associate assigned to the matter.  *Rosso v. Pi Mgmt. Assocs.*, No. 02-CV-1702, 2006 WL 1227671, \*2 (S.D.N.Y. May 3, 2006); Dkt. No. 45 at 9.  The attorneys who billed the second and third highest amounts, 30.4 and 28.8 hours, respectively, "limited their time to appropriate review and participation in court proceedings . . . [as they] had specialized knowledge in copyright litigation from numerous prior cases."  Dkt. No. 45-4 at ¶ 5b.  Furthermore, Plaintiff removed 10.8 hours of billed time to one partner "to err on the side of reasonableness."  *Id.* at 8.

Accordingly, the Court finds that Plaintiff is entitled to attorneys' fees in the amount of $86,355.00.

**D.      Costs and Disbursements**

Plaintiff also seeks reimbursement for costs and disbursements in the amount of $400.00.  *See* Dkt. No. 45 at 9.  The $400.00 cost reflects the filing fee for the Complaint in this matter, which is included as a taxable cost under 28 U.S.C. § 1920.  Accordingly, the Court approves this request.

## IV. CONCLUSION

After carefully reviewing Plaintiff's submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's Motion for Default Judgment (Dkt. No. 45) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's request for attorneys' fees and costs is **GRANTED** in the amount of $86,355.00; and the Court further

**ORDERS** that Plaintiff's request for a permanent injunction is **GRANTED**; and the Court further

**ORDERS** that Defendant, its officers, directors, principals, agents, servants, employees, successors and assigns, and all those persons and entities in active concert or participation with such persons, including, but not limited to, Remix Lighting, Inc., James Zhu, support@remixlighting.com, and RemixLighting.com, who receive notice of this Order are permanently enjoined and restrained from:

> (i) unlawful access to, use, reproduction, display, distribution, and/or creation of derivative works of Plaintiff's Copyrighted Works;

> (ii) assisting, aiding, or abetting any other person or business entity in engaging in unlawful access to, use, reproduction, and/or distribution of any products or imagines that are substantially similar to Plaintiff's Copyrighted Works and/or the creation of any derivative works based on Plaintiff's Copyrighted Works;

> (iii) shipping, delivering, distributing, returning or otherwise disposing of in any manner, any items currently in Defendant's possession or control (whether goods, instruments, packaging, product parts, labels, documents, or otherwise) which bear any of Plaintiff's registered trademarks identified in paragraph (i) above, or any copy or reproduction of the registered marks, or any substantially identical mark;

> (iv) continuing to perform in any manner whatsoever any acts which infringe Plaintiff's registered marks identified in paragraph (i) above or attempt to pass-off counterfeit products purporting to be Plaintiff's products; and the Court further

**ORDERS** that Defendant shall destroy all unauthorized copies of Plaintiff's Copyrighted Works that it has in its possession, custody, or control, including the removal of all photographic and three-dimensional copies and substantially similar versions of the Copyrighted Works from its online marketplace and third-party online marketplaces on which it advertises or sells products, including, but not limited to, RemixLighting.com and Houzz.com; and the Court further

**ORDERS** that those in privity with Defendant and with actual notice of this Order, including any online marketplaces such as, but not limited to, Houzz.com, shall within three (3)

business days of receipt of this Order disable and cease providing services for any accounts through which Defendant, currently or in the future, engages in the advertisement and/or sale of goods using Plaintiff's Copyrighted Works, including, but not limited to, any accounts associated with Defendant (Remix Lighting, Inc., James Zhu, support@remixlighting.com, and RemixLighting.com); and the Court further

**ORDERS** that Houzz shall, within three (3) business days of receipt of this Order, permanently restrain and enjoin any accounts (including those based in China) connected to Defendant from transferring or disposing of any money or other of Defendant's assets; and the Court further

**ORDERS** that all monies currently available in Defendant's financial accounts associated with online marketplaces including, but not limited to, RemixLighting.com and Houzz.com, are hereby released to Plaintiff as partial payment of the above-identified costs and attorneys' fees, and such online marketplaces are ordered to release to Plaintiff the amounts from Defendant's financial accounts within ten (10) business days of receipt of this Order; and the Court further

**ORDERS** that until Plaintiff has recovered full payment of monies owed to it by Defendant, Plaintiff shall have the ongoing authority to serve this Order on Houzz and any other online marketplace in the event that any new financial accounts controlled or operated by the Defendant are identified. Upon receipt of this Order, the applicable online marketplace shall within three (3) business days: (1) locate all accounts and funds connected to Defendant, including, but not limited to, any accounts connected to Remix Lighting, Inc., James Zhu, support@remixlighting.com, and RemixLighting.com; (2) restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defendant's assets; and (3) release all monies restrained in Defendant's account(s) to Plaintiff as partial payment of the

above-identified damages within ten (10) business days of receipt of this Order; and the Court further

     **ORDERS** that until Plaintiff has recovered full payment of monies owed to it by Defendant, Plaintiff shall have the ongoing authority to serve this Order on any banks, savings and loan associations, payment processors, or other financial institutions (collectively, "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defendant are identified. Upon receipt of this Order, the applicable Financial Service Provider shall within three (3) business days: (1) locate all accounts and funds connected to Defendant, including, but not limited to, any accounts connected to Remix Lighting, Inc., James Zhu, support@remixlighting.com, and RemixLighting.com; (2) restrain and enjoin such accounts or funds that from receiving, transferring or disposing of any money or other of Defendant's assets; and (3) release all monies restrained in Defendant's account(s) to Plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of this Order; and the Court further

     **ORDERS** that in the event that Plaintiff discovers that Defendant has violated any of the terms of the Default Judgment, whether in connection with the online marketplaces identified in this action, new online marketplaces owned or operated by Defendant, or through any other means, Plaintiff may move the Court for a supplemental order as may be appropriate to effectuate the purposes of this Default Judgment; and the Court further

     **ORDERS** that this Court shall retain jurisdiction over the parties and the subject matter of this litigation for the purposes of interpretation and enforcement of this Default Judgment; and the Court further

**ORDERS** that Plaintiff shall serve a copy of this Memorandum-Decision and Order on

Defendant by Certified Mail, return receipt requested, and file proof of service with the Court;

and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor and close

this case.

**IT IS SO ORDERED.**

Dated: December 5, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge